UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | No. 6:16-CR-05-KKC-HAI-17 |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| GREGORY HUTCHINSON, | ) | |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Caldwell (D.E. 933), the Court considers reported violations of supervised release conditions by Defendant Gregory Hutchinson.

Judge Caldwell entered a judgment against Defendant in August 2017 upon a plea of guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). D.E. 731. Defendant received a sentence of 92 months of imprisonment followed by a three-year term of supervised release. *Id*. Defendant began his supervised release term on April 18, 2023.

On June 16, 2023, the United States Probation Office ("USPO") reported that Defendant had unlawfully used a controlled substance and committed the crime of controlled-substance possession. D.E. 923. The USPO requested that no action be taken, and Judge Caldwell approved that request. According to that report,

> On June 15, 2023, this officer conducted a home visit with Hutchinson and obtained a urine sample for testing. The sample tested positive for methamphetamine via instant testing device. Upon questioning, Hutchinson admitted to using methamphetamine on June 11, 2023, and signed an admission form confirming this use.
>
> Hutchinson is scheduled to begin outpatient substance abuse treatment in the upcoming week. This officer recommends no action be taken at this time so that Hutchinson can participate in a treatment program in conjunction with

> increased randomized drug testing. This officer will closely monitor Hutchinson and promptly report any additional non-compliance to the Court.

*Id*.

## I.

On August 14, 2023, the USPO issued the Supervised Release Violation Report ("the Report") that initiated these proceedings. The Report charges two Grade-C violations: one of the condition that requires the Defendant to notify Probation of any change of residence, and one of the condition that requires participation in a substance-abuse-treatment program at the direction of the probation officer. According to the Report,

> On July 26, 2023, this officer attempted to make contact with Hutchinson at his residence. Hutchinson was not at the residence and his sister and niece both stated Hutchinson had been there that morning and they were not aware he had left and did not know where he could be located. This officer, Hutchinson's sister, and Hutchinson's niece attempted to contact him by phone and text message with no response.
>
> On July 27, 2023, staff at Windows of Discovery notified this officer Hutchinson missed his substance abuse treatment appointment with them that date and they were unable to reach him by phone.
>
> This officer attempted contact with Hutchinson on July 28th and August 3rd via phone and text message but received no response from Hutchinson. This officer also contacted Hutchinson's sister on July 28th and August 9th, and she confirmed Hutchinson has not returned to the home or contacted her since July 26th.

On September 25, 2023, the Court conducted an initial appearance pursuant to Rule 32.1. D.E. 941. Defendant made a knowing, voluntary, and intelligent waiver of the right to a preliminary hearing, and the Court set a final hearing date. *Id*. At the initial appearance, the government moved for interim detention; Defendant did not argue for release. *Id*. The Court therefore remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on October 10, 2023, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 943. Defendant competently entered a knowing, voluntary, and intelligent stipulation to both violations, and the parties presented a jointly recommended penalty. *Id*. For purposes of Rule 32.1 proceedings, Defendant admitted the factual basis for each violation described in the Report. *Id*

## II.

The Court has evaluated the entire record, including the Report and accompanying documents and the sentencing materials from the underlying judgment in this District. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g). D.E. 731. This is a Class C felony. For a Class C felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. *See* 18 U.S.C. § 3583(e).

The Policy Statements in Chapter 7 of the Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the particular violation proven. *See United States v. Perez-Arellano*, 212 F. App'x. 436, 438-39 (6th Cir. 2007). Here, both violations are Grade-C violations.. Given Defendant's Criminal History Category of VI (the category at the time of his federal conviction) and Grade C violations, Defendant's range, under the Revocation Table of Chapter 7, is eight to fourteen months.

A court may re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b) & (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See* 18 U.S.C. § 3583(h). Here, the maximum term of supervised release that can be imposed is 36 months, less any term of imprisonment imposed. 18 U.S.C. § 3583(h).

### III.

The parties presented a jointly recommended penalty of revocation with four months of incarceration, followed by 32 months of supervision, to commence with a 90-day inpatient substance-abuse treatment program. The parties also requested mental health treatment as soon as possible. They requested a condition requiring a mental health assessment upon release.

The government stressed that Defendant's underlying federal crime was driven by his addiction. According to the PSR, Defendant was connected to an extensive meth-trafficking operation. One suspect, Anthony Murphy, was shot after pointing a pistol at two sheriff's deputies. PSR ¶ 17. The investigation into that weapon revealed that "on December 2, 2015, an individual named Brian Freeman had purchased a handgun. A few days later, Freeman sold the firearm to Greg Hutchinson, a multi-convicted felon. Hutchinson then traded the firearm to Anthony Murphy in exchange for methamphetamine. *Id*. ¶ 18. Additionally,

> On January 7, 2016, law enforcement interviewed Greg Hutchinson, a multi-convicted felon, about a firearm he possessed in December 2015. Hutchinson admitted to possessing a . . . handgun and stated that he had purchased the firearm from Brian Freeman. Hutchinson stated that he later traded the firearm to Anthony Murphy in exchange for one gram of methamphetamine. Hutchinson admitted to receiving one (1) gram of methamphetamine on approximately three (3) occasions from Anthony. Hutchinson admitted to being addicted to methamphetamine.

*Id.* ¶ 29. Defendant's addiction also lurked behind the meth-positive urine sample that formed the basis of the USPO's June 2023 12A report. D.E. 923.

According to the government, Defendant's addiction-driven conduct, along with his "absconding" warranted revocation and imprisonment. However, the government sought a below-Guidelines incarceration sentence partly because, upon release from the four-month incarceration, Defendant would spend an additional three months in inpatient treatment. The government stressed that Defendant had little opportunity for treatment before now.

The defense agreed, but argued the real issues in this matter are Defendant's substance abuse *and* his heretofore unaddressed mental health issues. According to the defense, Defendant grew up being taught not to talk about his problems. But now, he is seeking help.

Defendant addressed the Court. He said he struggles a lot mentally, and that leads to his substance abuse. He said he needs help. He has had difficulty dealing with grief and with being released from his prison sentence. Although he had trouble articulating his thoughts, he appeared to be saying that he turned to drugs to self-medicate his anxiety symptoms.

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range of eight to fourteen months. The Court has carefully weighed the nature and circumstances of the offense and Defendant's particular history and characteristics. The original offense, involving a wide-ranging methamphetamine manufacturing conspiracy, is clearly serious. However, Defendant was roped in as a user, not a trafficker. He exchanged a gun for meth. This is consistent with much of his history and characteristics. Defendant's 30-year criminal history is terrible, but the parties and the Court hope that, as he approaches 50, he will be able to make a

lasting change in his life. The theme of the revocation hearing was that, if Defendant's mental-health and drug-abuse issues can be dealt with, this will obviate his criminal tendencies.

Neither party stressed a need to deter criminal conduct or protect the public. Defendant's actual revocation conduct here—changing residences and abandoning outpatient drug treatment—were mostly failures to comply with terms of supervision imposed for his own protection and rehabilitation. The Court is also of course aware of his methamphetamine use in June. His possession of meth indicates some contact with the black market. So, Defendant does pose a danger as long as his substance-abuse tendencies persist.

Regarding the need for education and treatment, the Court and the parties recognize a need for additional drug treatment. Accordingly, the recommendation involves inpatient treatment upon release and evaluation for mental-health treatment.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b). Absconding from supervision and treatment are serious. Defendant should not run away from the resources provided to help him. This violation of trust drives the need for a term of imprisonment.

One factor the Court must consider is the need to avoid unwarranted sentencing disparities. This factor is usually addressed by imposing a within-Guidelines sentence. Here, the Court recommends adopting the jointly recommended four-month incarceration period. This is below the Guidelines Range of eight to fourteen months. When varying from the Range, the Court must provide an adequate explanation and "'consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance.'" *Johnson*, 640 F.3d at 205 (quoting *Gall v. United States*, 552 U.S. 38, 50 (2007)). The Court

must state "'the *specific reason* for the imposition of a sentence different from that described [in the applicable Guidelines or policy statements.]'" *Id.* (quoting 18 U.S.C. § 3553(c)(2)).

Here, both violations were Grade C, so revocation is not mandatory. Also, all concerned agreed that Defendant's misbehavior may be driven by a combination of substance abuse and mental health issues. Addressing these issues could facilitate the goals behind the Guidelines factors. Further, the short incarceration period is counterbalanced by the 90 days of inpatient treatment, in which Defendant's movement will also be curtailed.

The undersigned, assuming Defendant is serious about making a change, recommends adopting the joint proposed penalty—revocation with four months of imprisonment. The maximum remaining available supervision period, that is 32 months, should also be imposed upon release. Further, as soon as possible after release, Defendant should be required to enroll in and complete a 90-day inpatient substance-abuse treatment program. An additional condition should be added that requires a mental health evaluation and treatment at the discretion and direction of the probation officer.

## V.

Based on the foregoing, the Court **RECOMMENDS**:

(1)  That Defendant be found guilty of both violations.

(2)  Revocation with a term of incarceration of four months.

(3)  A term of supervised release of 32 months. As soon as possible upon release, Defendant, at the direction of the probation officer, must enroll in, and complete, a 90-day inpatient substance-abuse treatment program.

  (4)  An additional condition that Defendant upon release be promptly evaluated for mental health treatment and complete any such treatment at the direction and discretion of the probation officer.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute. *See also* 18 U.S.C. § 3401(i). Pursuant to Rule 59(b)(2), any party wishing to object **SHALL** do so by an appropriate filing in the record within **FIVE DAYS** after being served with a copy of this recommended decision. Any party may object to any or all portions of this recommendation for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Caldwell's docket upon submission. If Defendant chooses to waive allocution, he **SHALL** do so on or before the deadline for filing objections.

This the 10th day of October, 2023.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge